Carr, J.
I feel no doubt about the facts of this case: the evidence establishes all the material allegations of the bill, and wholly discredits the answer. [He stated the case as alleged, and, in liis opinion, fully proved]. My only difficulty has been on the question of jurisdiction; for I am principled against stretching the doctrines of equity, to take in every case which seems to present hardship. Upon examination, however, I am satisfied, that the bill presents a case proper lor relief in equity. It expressly charges fraud in the contract, and prays a decree against Price for the amount of the notes, and a sale of the house and lot in default of payment. Fraud is one of the largest and most fruitful heads of equity. In 1 Madd. Ch. Prac. 258. the general proposition is laid down, and many cases cited in support of it, that “ in all cases of fraud not penal, a court of equity has a concurrent jurisdiction with courts of law, with the exception as to fraud in obtaining a will.” It will be observed, that the very phrase (concurrent jurisdiction,) gives the idea, that equity may act, where there is also a remedy at law; and the cases shew this clearly. Thus, in Colt v. Woollaston, 2 P. Wms. 156. the defendant had invented a project for extracting oil out of radishes, for which he obtained a patent and sold out shares, at £ 20. a piece; the plaintiffs had bought six shares, and paid £, 120. for them; the thing turned out a bubble, and they filed their bill to recover back the money. It was objected, that if ag *56 grieved, they had a plain remedy at law; but the bill.was grained, and a decree rendered. On the point of jurisdiction, the court said, “ It is no objection, that the parties have their remedy at law, and may bring an action, for money had and received to the plaintiff’s own use; for in cases of fraud, the court of equity has a concurrent jurisdiction with the common law,—matter of fraud being the great subject of relief here.” Stent v. Bailis, Id. 220. is a case of the same kind, where the same objection received the same answer. I consider these cases exactly in point. But it seems to me, there is another ground of equity. Poore had a lien on Barretts property (I do not speak of the equitable lien—he had an actual incumbrance by deed) and this he was induced to release, by that false and fraudulent representation, which Price made as to the notes, and which formed a part of the very contract, by which Price obtained the property. Now, we know, that fraud or covin (as is said in Fermor’s case 3 Co. 77. and repeated by lord Mansfield, in Bright v. Eynon, 1 Burr. 395.) may, in judgment of law, avoid every kind of act; and we know also, that, in such cases, it is the peculiar province of equity, to place the parties as nearly as may be in their former situation. Price still holds this property, and the bill prays that the plaintiff’s lien on it may be revived, and that in default of payment of the notes by Price, there may be a decree for the sale of the property. And this seems to me clearly just. We do not know what may be the circumstances of Price, nor can this make any difference in the principle: but suppose him insolvent, except as to this property, would it not be very unjust, that he should hold it clear of the lien which he had, by his own fraud, induced the plaintiff to give up?
I think, therefore, that the decree should be reversed and a decree entered here, for the amount of the notes, with interest, to be paid within a given time; and, in default of such payment, that the property be sold to raise the money.
Cabell and Brooke, J. concurred.
*57 Tucker, P.
The case alleged in the hill is completely proved. The bill sets forth a detail of facts, out of which arise two substantive reasons for charging the defendant. That, indeed, on which the draftsman of the bill seems to have principally relied, was the promise of Price to pay the notes, if the defence of usury should be set up. JBut it is also alleged, that Price, when he transferred the notes of Campbell and Brooks, stated them to be perfectly good, the payment being secured upon property of tenfold the value. Now, if this was not true; if Campbell and Brooks were insolvent; if Price’s indorsement of the notes was dispensed with, so that there was to be no responsibility on his part on the ground of insolvency; and if, obviously, this was all done in consequence of Price’s assurance that Campbell and Brooks were good, and those notes well secured; it is very clear, that this allegation is all important, and that if the waiver of Price’s own responsibility as an indorser, was the consequence of these false representations made by him, such release of Price must be considered void, and he regarded as bound for the demand. There are, then, two foundations for the claim to relief: 1. the agreement to be responsible upon the plea of usury being resorted to ; and 2. •the fraud of Price, in representing the paper as well secured, and absolving himself from liability by transferring the notes without indorsing them.
The last of these grounds is amply sufficient to sustain the jurisdiction of the court; lor Poore could not make Price responsible at law for the insolvency of Campbell and Brooks, since his name does not appear upon the notes, and it was understood that there was to be no responsibility on the ground of insolvency. But in equity, he is made responsible, by reason of the fraud and misrepresentation.
The first ground may also be maintained in a court of equity, under the circumstances of this case; a suit being at that time in progress between Campbell on the one part, and Poore and Price on the other, in relation to the same transaction. This suit gave the court of equity cognizance of the controversy, and there could be no doubt of the right *58 of Poore to file a cross bill, asking relief in case the usury should be established. But he claimed to charge him as soon as the defence of usury should be set up. Here, then, were two grounds, upon which Price might be chargeable, on the last of which Poore might fail; and even though it should be admitted that Poore might have asserted his right, as to either, in a court of law, yet, as the court of equity clearly had jurisdiction as to the former, as incidental to the suit already depending there, it was proper that the other matter should be also brought before it, instead of having two litigations, before different tribunals, in relation to the same transaction. But if this be not so, still as Poore was induced to take the paper by false representations, equity has cognizance to relieve against the fraud, to set aside the contract, and place Poore in the situation he held before it; that is, as a creditor having an express lien for his debt, upon the property purchased by Price. In all these various points of view, I think the court had jurisdiction, and instead of dismissing the bill should have decreed for the plaintiff.
This decree, I think, should have been, in the first instance, personal against Price, with liberty to Poore, if it proved unavailing, to resort to his lien, in the same manner and to the same extent (but no farther), as if that lien had never been released; for, in my opinion, upon setting aside the fraudulent transaction, Poore should be reinstated in his rights, in the same extent as if the contract never had been made.
Decree reversed.